[Cite as *In re McCauley Irrevocable Trust*, 2014-Ohio-3692.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: CLETUS P. MCCAULEY AND MARY A. MCCAULEY IRREVOCABLE TRUST | : : : : : : : : : : : | JUDGES:<br>Hon. W. Scott Gwin, P.J.<br>Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J.<br><br><br>Case No. 2013CA00188<br><br><br>O P I N I O N |

CHARACTER OF PROCEEDING:       Civil appeal from the Stark County Court of
                               Common Pleas, Probate Division, Case No.
                               208532

JUDGMENT:                      Affirmed

DATE OF JUDGMENT ENTRY:        August 25, 2014

APPEARANCES:

For Appellee                   For Appellants

JOHN FRANK                     CRAIG CONLEY
3930 Fulton Drive N.W.         604 Huntington Plaza
Suite 102-A                    220 Market Avenue South
Canton, OH  44718              Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellants appeal the September 9, 2013 judgment entry of the Stark County Court of Common Pleas, Probate Division, that granted appellee's motion for authority to pay funeral and burial expenses of primary trust beneficiary Kevin McCauley.

*Facts & Procedural History*

{¶2} Cletus McCauley ("Cletus") and Mary McCauley ("Mary") were the parents of four children, including Paula A. Clark ("Paula") and Kevin L. McCauley ("Kevin"). On May 29, 2007, Cletus and Mary executed a will that gave specific sums of money to their children. The remainder was to pour-over into the Cletus P. McCauley Trust. On May 29, 2007, Cletus and Mary also created the Cletus P. & Mary A. McCauley Irrevocable Trust designed to benefit Kevin, their special needs adult son. Paula is the mother of two adult daughters, appellants Jennifer M. Fricke ("Jennifer") and Emily R. Clark ("Emily"). Jennifer and Emily base their standing in this matter upon their status as beneficiaries of the McCauley Estate and/or as remainder beneficiaries of the McCauley Irrevocable Trust.

{¶3} Mary died on August 9, 2008 and Cletus died on December 23, 2008. Paula was appointed to serve as the executrix and opened Cletus' estate in the Stark County Probate Court on December 30, 2008. Raymond McCauley was appointed the trustee of the McCauley Irrevocable Trust. On September 15, 2008, Paula was appointed the first successor trustee for the Irrevocable Trust due to Raymond McCauley's health issues.

{¶4} Since 2009, the parties involved with the McCauley Estate and McCauley Irrevocable Trust have been embroiled in litigation in the Probate Court, General Division, Appellate Court, and the Ohio Supreme Court. The actions of the parties to the McCauley Estate and Irrevocable Trust have spawned at least six Probate Court cases and eight appeals with multiples issues and intertwined claims. A visiting judge was assigned by the Ohio Supreme Court to preside over the multiple Probate Court cases on October 20, 2011. A second visiting judge was assigned on May 7, 2014.

{¶5} On April 8, 2009, the Guardian of the Estate for Kevin filed objections to the inventory and appraisal filed by Paula for the McCauley Estate. The Guardian objected on the belief that significant assets were not included in the inventory and appraisal. On February 22, 2010, Paula filed a declaratory judgment action in the General Division and requested a declaratory judgment as to the validity of certain bank accounts. The General Division case was transferred to the Probate Court and the decision to transfer the case was affirmed on appeal.

{¶6} On March 24, 2010, the Guardian of the Estate for Kevin filed an action in the Probate Court in Case No. 208532 to remove Paula as the executrix and trustee. The basis for the complaint was the declaratory judgment action originally filed in the General Division where Kevin alleged that Paula took assets belonging to the estate, which thereby created a conflict in her position as executrix and trustee. The Guardian requested that Paula make an accounting to the estate and trust and be ordered to pay back the estate and trust. On August 3, 2010, Paula filed an answer and counterclaim in Case No. 208532. She requested declaratory judgment that the bank accounts were proper and were her property.

{¶7} In Probate Case No. 209512, the court (1) removed Paula as the executrix of the McCauley Estate on July 13, 2010; and (2) appointed John R. Frank, Esq. ("Frank") to serve as the administrator with will annexed (WWA) of the McCauley Estate on July 28, 2010. Paula, Jennifer, and Emily filed four motions to remove Frank as the administrator of the McCauley Estate. The Probate court denied the motions and this court affirmed on appeal.

{¶8} On November 16, 2010 in Case No. 208532, Paula filed a notice that she had filed bankruptcy. On November 18, 2010, the Probate Court named appellee Frank the second successor trustee of the Irrevocable Trust in Case No. 208532.

{¶9} On July 27, 2011, the McCauley Estate and McCauley Irrevocable Trust filed a legal malpractice action in the General Division against Craig Conley, Esq., counsel for Paula, Jennifer, and Emily. The parties settled the matter.

{¶10} On November 17, 2011, in Probate Case Nos. 204989 and 209055, the court determined five bank accounts claimed to be Paula's property were estate assets. This court affirmed the judgment in Case No. 2011CA00272.

{¶11} On June 20, 2013, Paula, Jennifer, and Emily filed a motion for reimbursement in Probate Court Case No. 209512 alleging that Frank misused funds of the estate to pay for a legal malpractice expert in the amount of $4,906.25. The Probate Court denied this motion on October 15, 2013. Paula, Jennifer, and Emily appealed the judgment to this Court in Case No. 2013CA0222 on November 13, 2013.

{¶12} On June 24, 2013, Frank filed a motion to appoint a third successor trustee in Case No. 208532.

{¶13} Kevin passed away on September 6, 2013. Kevin was indigent when he died and his Medicaid application was pending at the time of his death. Kevin's funeral occurred on September 9, 2013 after the arrangements were made by his sister Paula. On September 9, 2013, Frank filed a motion with the Probate Court in Case No. 208532 for authority to pay for Kevin's funeral and burial expenses from the McCauley Irrevocable Trust in the amount of $7,738.31. The Probate Court granted the motion on September 9, 2013. Jennifer and Emily filed a memorandum in opposition to Frank's motion on September 9, 2013.

{¶14} On September 10, 2013, Jennifer and Emily filed a motion to reconsider and/or vacate the September 9, 2013 judgment entry granting the authority to expend the funds for Kevin's funeral and burial expenses. The Probate Court denied the motion to reconsider/vacate on September 23, 2013, finding Kevin's funeral and burial expenses were necessary and reasonable expenses pursuant to the trust provisions that the trust provide for the maintenance and support for Kevin and that it was the intent of Cletus and Mary to provide for all the needs of Kevin, their disabled son. On September 18, 2013, Jennifer and Emily appealed the September 9, 2013 judgment entry granting Frank the authority to expend funds on Kevin's funeral and burial expenses, which is the subject of the instant appeal.

{¶15} On September 11, 2013, Paula, Jennifer, and Emily filed a motion to appoint a third successor trustee. They withdrew the motion on October 3, 2013. On September 20, 2013, Jennifer and Emily filed a declaratory judgment action in the General Division under Case No. 2013CV02559 alleging that Frank breached his fiduciary duties to the trust beneficiaries. The General Division transferred the

declaratory judgment action to the Probate Court to be consolidated with Probate Case No. 208532 on November 8, 2013.

{¶16} On October 23, 2013, the Probate Court scheduled a hearing for November 13, 2013, to set a bond on the appeals of judgments rendered in Probate Court Case Nos. 209512, 208532, 209055, and 205029. The Probate Court held a hearing in Case No. 208532 on November 13, 2013. On November 15, 2013, the Probate Court granted Frank's motion to pay a videographer to record a meeting at the McCauley Irrevocable Trust property.

{¶17} Jennifer and Emily filed a declaratory judgment action against Frank in Probate Court Case No. 219397 on November 21, 2013. The trial court determined that General Division Case No. 2013CV02559 should be consolidated with Probate Court Case No. 219397 instead of Case No. 208532.

{¶18} On November 25, 2013, the Probate Court issued a judgment entry finding that it had jurisdiction to preside over the administration of the inter vivos trust even though the beneficiary of the trust was deceased and ordered Jennifer and Emily to post a $10,000.00 supersedeas bond during the pendency of the appeals, to cover additional costs and expenses. The Probate Court also found it was in the best interest of the trust to appoint Terrence L. Seeberger, Esq. to represent the interest of the trust. Jennifer and Emily filed a notice of appeal of the November 25, 2013 judgment entry on December 4, 2013 in Case No. 2013CA00237.

{¶19} On February 3, 2014, the trial court consolidated Case No. 208532 with Case No. 219397. Jennifer and Emily appealed the decision to consolidate in Case No.

2014CA00031. On March 7, 2013, the Probate Court ordered that Paula's pending counterclaim in Case No. 208532 would be heard in Case No. 219397.

{¶20} On April 10, 2014, Frank filed a motion for instructions as to the irrevocable trust in Probate Court Case No. 220494. On April 17, 2013, counsel for the irrevocable trust filed a proposed distribution of the irrevocable trust. Jennifer and Emily objected on jurisdictional grounds. On July 15, 2014, Visiting Judge Stormer overruled the jurisdictional objections and issued a judgment entry that ordered Frank to distribute one-half of the irrevocable trust balance, or $129,000, to the beneficiaries, in equal shares. The court also ordered Frank not to make any additional distributions until the completion of all estate/trust litigation.

{¶21} Jennifer and Emily appeal the September 9, 2013 judgment entry of the Probate Court and assert the following as error:

{¶22} "I. THE TRIAL COURT ERRED IN AUTHORIZING THE TRUST FIDUCIARY TO PAY, WITH TRUST FUNDS AND WITHOUT THE APPROVAL/CONSENT OF THE SOLE TRUST BENEFICARIES, THE FUNERAL AND BURIAL EXPENSES OF THE SUBJECT TRUST'S DECEASED (AND THEREFORE FORMER) PRIMARY BENEFICIARY."

I.

*Jurisdiction*

{¶23} Appellants first argue the trial court erred in granting the motion for authority to expend funds for Kevin's funeral and burial from the inter vivos trust because the trial court lacked subject matter jurisdiction. We disagree.

{¶24} We find the Probate Court retained jurisdiction over the administration of the Irrevocable Trust pursuant to the duties and powers of the Probate Court as stated in R.C. 2101.24 and 5802.01. The statutes state:

{¶25} R.C. 2101.24:

* * *

(B)(1) The probate court has concurrent jurisdiction with, and the same powers at law and in equity as, the general division of the court of common pleas to issue writs and orders, and to hear and determine actions as follows:

* * *

(b) Any action that involves an inter vivos trust; a trust created pursuant to section 5815.28 of the Revised Code;

* * *

(C) The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code.

R.C. 5802.01:

* * *

(B) An inter vivos trust is not subject to continuing judicial supervision unless ordered by the court. Trusts created pursuant to a section of the Revised Code or a judgment or decree of a court are subject to continuing judicial supervision to the extent provided by the section, judgment, or decree or by court order.

(C) A judicial proceeding involving a trust may relate to any matter involving the trust's administration, including a request for instructions and an action to declare rights.

**{¶26}** The record in this case is replete with the Probate Court's combined exercise of judicial supervision of the Irrevocable Trust as ordered by its judgment entries and the parties' reliance on the Probate Court's continuing jurisdiction by their continual filings in Case No. 208532.

*Local Rules*

**{¶27}** Appellants next argues the trial court erred in granting the motion for authority to expend funds for Kevin's funeral and burial expenses from trust funds because, as per the requirement in Local Rule 78.7(A), they were not given the opportunity to object to the motion since the trial court granted it the same day it was filed.  We disagree.

**{¶28}** Local Rule 78.7 provides that "opposing counsel or a party shall serve the response memorandum on or before the fourteenth (14th) day after the date of service as set forth on the Certificate of Service attached to the served copy of the motion."

**{¶29}** Local rules of court are, in general, procedural in nature. *Francis v. Francis*, 8th Dist. Cuyahoa No. 62973, 1993 WL 226488 (June 24, 1993).  Accordingly, the enforcement of local procedural rules is a matter within the discretion of the trial court.  *Yanik v. Yanik,* 9th Dist. No. 21406, 2003-Ohio-4155.  An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶30}** While the preferred course of action is for the trial court to adhere to the local rules rather than ignore them, "local rules are of the court's own making, procedural in nature, and not substantive principles of law. Accordingly, it has been held that there is no error when, in its sound discretion, the court decides that the peculiar circumstances of a case require deviation from its own rules." *Lorain County Bank v. Berg*, 9th Dist. No. 91CA005183, 1992 WL 174633 (July 22, 1992).

**{¶31}** Local Rule 78.7(A) provides the deadline for filing motions and responses thereto in the Stark County Probate Court and the trial court did not abide by this rule. However, we cannot find the failure to do so an abuse of discretion under the peculiar or exigent and time-sensitive circumstances in this case. Because of the need to embalm Kevin's body, the date and time set for the funeral and burial by Paula, and the insolvency of Kevin's estate, the trial court did not abuse its discretion in deciding that an expedient adjudication of the motion was necessary. Further, as evidenced by the lengthy procedural history detailed above, the trial judge had full knowledge of the procedural posture and detailed circumstances in the case.

**{¶32}** In addition, appellants were not deprived of the opportunity to be heard on the issue and thus any departure from the local rules is not reversible error. They filed a memorandum contra on September 9, 2013, after the trial judge had granted the motion, and they also filed a motion to vacate the September 9, 2013 judgment entry on September 10, 2013. As evidenced by the trial court's September 23, 2013 judgment entry denying the motion to vacate, the trial court clearly considered the arguments of appellants with regards to the trustee's motion for authority to pay Kevin's funeral and burial expenses.

*Authorization of Payment*

**{¶33}** Appellants finally argue the trial court erred in granting the motion for authority to pay for Kevin's funeral and burial expenses because the trust agreement does not authorize such a payment.

**{¶34}** The interpretation of a written instrument like a trust is a matter of law. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586. A court's purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent. *Domo v. McCarthy*, 66 Ohio St.3d 312, 612 N.E.2d 706 (1993). Interpreting a trust is akin to interpreting a contract and the role of the court is to "ascertain and give effect to the intent of the parties." *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452.

**{¶35}** The settlor's intent is determined by considering the language used in the trust, reading all the provisions of the trust together and "read in light of the applicable law, and circumstances surrounding the [trust's] execution". *Central Trust Co. of Northern Ohio, N.A. v. Smith,* 50 Ohio St.3d 133, 553 N.E.2d 265 (1990); *Mumma v. Huntington Nat'l Bank of Columbus*, 9 Ohio App.2d 166, 223 N.E.2d 621 (10th Dist. 1967). Generally, when the language of the instrument is not ambiguous, a court may ascertain the settlor's intent from the express terms of the trust itself. *In re Estate of Davis*, 109 Ohio App.3d 181, 671 N.E.2d 1302 (12th Dist. 1996). A court presumes the settlor used the words in the trust according to their common, ordinary meaning. *In re Trust of Brooke*, 82 Ohio St.3d 553, 1998-Ohio-185, 697 N.E. 191. Only when the express language of the instrument creates doubt as to its meaning may the court consider extrinsic evidence to determine the testator's intent. *Oliver v. Bank One,*

*Dayton, N.A.*, 60 Ohio St.3d 32, 573 N.E.2d 55 (1991). When determining the settlor's intent, an inter vivos trust speaks from the date of its creation, not the date upon which the assets are distributed. *Ohio Citizens Bank v. Mills*, 45 Ohio St.3d 153, 543 N.E.2d 1206 (1989).

{¶36} In this case, appellants argue that since Article III of the trust includes the phrase "during the lifetime of" Kevin, that the trust income may only be utilized for Kevin during his lifetime and cannot be utilized for funeral or burial expenses after Kevin's death. We disagree.

{¶37} There is no specific provision in the trust agreement regarding the payment or non-allowance of payment of Kevin's funeral and burial expenses. However, as noted above, courts will attempt to carry out the wishes of the settlor. Cletus and Mary created a trust for the benefit of their special needs son Kevin and knew the situation when they set up the trust. From the language of the trust as a whole, it is clear Cletus and Mary intended that there be a trustee who would look out for Kevin and who would have funds available to provide for all of Kevin's needs. The first paragraph of the trust agreement provides that Cletus and Mary "enter[ed] into this Trust Agreement for the benefit of our son, Kevin L. McCauley." In Article II, the trust agreement gives the trustee the power to amend the trust to obtain favorable tax treatment, address new laws or regulations, or with regards to Medicaid such as in the best interest of Kevin. While Article III, Section 3.2 includes the phrase during Kevin's "lifetime," Article III, Section 3.1 provides that all property in the trust "shall be held and/or distributed for the primary benefit of our son, Kevin McCauley," with no such limiting language. Article VI provides that the trustee, in his sole discretion, may pay or

"expend for the maintenance, support, or education" of Kevin any sums the trustee deems proper. Article VIII states that in matters involving discretion, the trustee may rely upon such information as on reasonable inquiry may be deemed adequate and the trustee must make decisions in good faith.

{¶38} We find that, in reading all of the provisions of the trust together with the applicable law and circumstances surrounding the trust's execution, the trial court did not err in granting the motion for authority to expend funds to pay for Kevin's funeral and burial. As noted by the Ohio Supreme Court, in ascertaining the intention of the settler, a court is not limited to determining what is meant by any particular phrase but may also consider the necessary implication arising from the language of the instrument as a whole. *Casey v. Gallagher*, 11 Ohio St.2d 42, 227 N.E.2d 801 (1967). It is clear from the language in the trust, as a whole, that the trust was designed to maintain and support Kevin and provide for all of his needs. Cletus and Mary expressed an intent to benefit Kevin, their special needs adult son, with as much trust property as was possible with the discretion of the trustee to oversee the process. Kevin's funeral and burial expenses are expenses for the maintenance and support of Kevin that can be provided to him by Cletus and Mary through the trust they established for his benefit and that was designed to provide for all of his needs.

{¶39} Based on the foregoing, we overrule appellants' assignment of error. The September 9, 2013 entry of the Stark County Common Pleas Court, Probate Division, is affirmed.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur